The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Pamela T. Young and the briefs and arguments on appeal. The appealing party has not shown good ground to receive further evidence or to amend the holding of the Deputy Commissioners Opinion and Award. However, pursuant to its authority under G.S. 97-85, the Full Commission has modified in part and affirmed in part the Deputy Commissioners decision and enters the following Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered by the parties at the hearing on 22 September 1999 as:
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers Compensation Act.
2. An employment relationship existed between plaintiff-employee and defendant-employer at all relevant times herein.
3. The carrier on the risk was Montgomery Mutual Insurance Company at all relevant times herein.
4. Plaintiff sustained an admittedly compensable injury by accident on 12 March 1998.
5. The parties stipulated to an Industrial Commission Form 22 Wage Charts prepared by the defendants and introduced as Exhibits 2A, 2B, 2C, 2D, and 2E.
6. The issue presented is what is plaintiffs average weekly wage?
 ***********
Based upon the entire record of evidence, the Full Commission enters the following:
 FINDINGS OF FACT
1. On 12 March 1998, plaintiff was employed with defendant-employer as a concrete finisher. Plaintiff had been employed with the defendant-employer in this capacity for more than fifty-two weeks preceding the injury.
2. On 12 March 1998, plaintiff was injured when a bobcat machine being operated by a co-worker pinned plaintiff against a brick wall resulting in a fracture of sacrum inferior/superior pubic rami, fracture of the iliac and ruptured bladder. Ultimately, plaintiff had a below the knee amputation.
3. During the fifty-two (52) week period prior to plaintiffs 12 March 1998 injury by accident, he missed seven (7) or more consecutive days on one or more occasion. Therefore, under the facts of this case, the second method under G.S. 97-2(5) for calculating plaintiffs average weekly wage should be used. Pursuant to G.S. 97-2(5), the number of weeks plaintiff worked must be determined "after the time so lost has been deducted . . . Then, the number of weeks plaintiff worked will be divided into the wages he earned during this 52 week period. This method is mandatory under the statute and will bring about a result that is fair and just to all parties.
4. There are no extraordinary circumstance relating to plaintiffs average weekly wage upon which the Full Commission could use the fifth method of calculation under G.S. 97-2(5).
5. At the time of his compensable injury, plaintiff was retired and receiving Social Security benefits. Based upon the evidence of record, the reasonable inference is that plaintiff attempted to earn only as much wages as he could up to $7,000 so that he would not trigger the Social Security offset provisions. However, contrary to defendants contention, plaintiff was not an intermittent employee.
6. The starting point of the fifty-two (52) week period prior to plaintiffs injury by accident is 12 March 1997. The Full Commission cannot determine from the Industrial Commission Form 22 Wage Charts stipulated by the parties the amount of wages earned by plaintiff from 12 March 1997 through 31 March 1997. However, from the payroll records introduced into evidence by defendants, the Full Commission has determined that plaintiff earned $577.42 during this period. As for the number of days plaintiff worked during this period, the stipulated From 22 Wage Charts can be used. From these charts, the Full Commission has determined that plaintiff worked eleven (11) days during the period of 12 March 1997 through 31 March 1997.
7. In April 1997, both the payroll records and the Industrial Commission Form 22 Wage Charts reflect that plaintiff earned wages in the amount of $788.00. Plaintiff missed more than seven consecutive days from 26 April 1997 through 5 May 1997. Accordingly, only twenty-five (25) days should be used for April 1997 for purposes of calculating his average weekly wage.
8. In May 1997, both the payroll records and the Industrial Commission Form 22 Wage Charts reflect that plaintiff earned wages in the amount of $424.00. However, plaintiff missed more than seven consecutive days from 26 April 1997 through 5 May 1997 and from 10 May 1997 through 25 May 1997. Accordingly, only nine (9) days should be used for May 1997 for purposes of calculating his average weekly wage.
9. In June 1997, both the payroll records and the Industrial Commission Form 22 Wage Charts reflect that plaintiff earned wages in the amount of $608.00. However, plaintiff missed more than seven consecutive days from 31 May 1997 through 8 June 1997. Accordingly, only twenty-two (22) days should be used for June 1997 for purposes of calculating his average weekly wage.
10. In July 1997, both the payroll records and the Industrial Commission Form 22 Wage Charts reflect that plaintiff earned wages in the amount of $844.00.
11. In August, 1997, both the payroll records and the Industrial Commission Form 22 Wage Charts reflect that plaintiff earned wages in the amount of $520.00. However, there is an inconsistency in the payroll records and the Industrial Commission Form 22 Wage Charts. The payroll records indicate that plaintiff did not work prior to the week ending 15 August 1997. However, the Industrial Commission Form 22 Wage Charts reflect that plaintiff worked on 4 August through 6 August 1997 and on 8 August 1997. Glenda Rogers, defendant-employers owners widow, who "kept the books for defendant-employer, testified that had plaintiff worked during the week ending 8 August 1997, it would have been reflected on the payroll records. Mrs. Rogers conceded that the notations that he worked on 4 August through 6 August 1997 and on 8 August 1997 were most likely incorrect. Accordingly, the payroll records reflect that the maximum period of time that plaintiff could have worked in August 1997 is from 9 August 1997 through 31 August 1997. Accordingly, only twenty-one (21) days should be used for August 1997 for purposes of calculating his average weekly wage.
12. In September 1997, both the payroll records and the Industrial Commission Form 22 Wage Charts reflect that plaintiff earned wages in the amount of $720.00.
13. In October 1997, both the payroll records and the Industrial Commission Form 22 Wage Charts reflect that plaintiff earned wages in the amount of $778.00.
14. With respect to November and December 1997, there are significant inconsistencies in the payroll records and the Industrial Commission Form 22 Wage Charts. In November 1997, both the payroll records and the Industrial Commission Form 22 Wage Charts reflect that plaintiff earned wages in the amount of $264.00. However, the payroll records reflect that plaintiff only worked during the weeks ending 14 November and 21 November 1997 while the Industrial Commission Form 22 Wage Charts reflect that he worked virtually the entire month of November 1997. Mrs. Rogers admits that plaintiff earned $8.00 per hour in 1997 and that had he worked the entire month of November 1997 as reflected on the Industrial Commission Form 22 Wage Charts, he would have earned more than $264.00. Similarly, in December 1997, the payroll records reflect that he only worked during the week ending 12 December 1997 and earned only $204.00. However, the Industrial Commission Form 22 Wage Charts reflect that he worked virtually the entire month of December, yet earned only $204.00. Mrs. Rogers again admits that plaintiff would have earned a lot more than $204.00 during the month of December if he had worked all of the days reflected on the Industrial Commission Form 22 Wage Charts. Because the Full Commission cannot determine from the documentation submitted the number of days that plaintiff worked during November and December 1997, these two months should be excluded from average weekly wage calculations.
15. In January 1998, both the payroll records and the Industrial Commission Form 22 Wage Charts reflect that plaintiff earned wages in the amount of $224.00. The Industrial Commission Form 22 Wage Chart reflects that he only worked on 12 January, 13 January, 19 January, 20 January and 21 January 1998. Excluding the period that plaintiff missed more than seven consecutive days in January 1998, only ten (10) days should be used for January 1998 for purposes of calculating his average weekly wage.
16. In February 1998, both the payroll records and the Industrial Commission Form 22 Wage Charts reflect that plaintiff earned wages in the amount of $132.00. The Industrial Commission Form 22 Wage Chart reflects that plaintiff worked only 9 February, 10 February and 13 February 1998, which is consistent with the payroll records reflecting that he worked only during the week ending 13 February 1998. Accordingly, excluding the periods that plaintiff missed more than seven consecutive days in February 1998, only five (5) days should be used for February 1998 for purposes of calculating his average weekly wage.
17. In March 1998, both the payroll records and the Industrial Commission Form 22 Wage Charts reflect that plaintiff earned wages in the amount of $384.00. However, plaintiff missed more than seven consecutive days from 14 February 1998 through 1 March 1998. Accordingly, only eleven (11) days should be used for March 1998 for purposes of calculating his average weekly wage.
18. Plaintiffs earned wages from 12 March 1997 through the date of his injury by accident on 12 March 1998 in the amount of $6,009.42. Excluding all periods in which plaintiff missed more than seven consecutive days, plaintiff worked 206 days or 29.43 weeks during the period of 12 March 1997 to 12 March 1998. Accordingly, plaintiffs average weekly wage is $204.19, yielding a compensation rate of $136.19.
19. As the result of his 12 March 1997 injury by accident, plaintiff has been unable to earn wages in his former position with defendant-employer or in any other employment for the period of 12 March 1998 through the present and continuing.
 ***********
Based upon the foregoing findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Because plaintiff missed seven (7) or more consecutive days on one or more than one occasion during the fifty-two (52) week period prior to his 12 March 1997 injury by accident, his average weekly wage should be calculated by using the second method under G.S. 97-2(5). Pursuant to this method, plaintiffs average weekly wage on 12 March 1997 was $204.19, yielding a compensation rate of $136.19. G.S. 97-2(5).
2. Because use of the second method will bring about a result that is fair and just to all parties and in the absence of exception circumstances, the fifth method of calculating a claimants average weekly wage cannot, under the law be used. Id.
3. As the result of his injury by accident of 12 March 1998, plaintiff is entitled to ongoing total disability compensation at the rate of $136.19 per week for the period of 12 March 1998 through the present and continuing until such time as he returns to work or until further order of the Commission, subject to a credit for benefits paid by defendants during this period. G.S. 97-29.
4. As the result of his injury by accident of 12 March 1998, plaintiff is entitled to have defendants pay for all medical expenses incurred or to be incurred as a result of his compensable injury by accident of 12 March 1998. G.S. 97-25; G.S. 97-25.1.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission modifies and affirms the holding of the Deputy Commissioner and enters the following:
 AWARD
1. Defendants shall pay plaintiff ongoing total disability compensation at a rate of $136.19 per week for the period of 12 March 1998 through the present and continuing until the plaintiff returns to work or further order of the Commission subject to a credit for benefits paid by defendants during this period. With respect to the compensation that has accrued, it shall be paid to plaintiff in a lump sum. This compensation is subject to the attorneys fee approved herein.
2. Defendants shall pay the medical expenses incurred or to be incurred by plaintiff as a result of his compensable injury by accident of 12 March 1998.
3. A reasonable attorneys fee in the amount of twenty-five percent (25%) of the compensation approved herein is approved for counsel for plaintiff. From the compensation that has accrued, this fee shall be deducted from the amounts due plaintiff and paid directly to plaintiffs attorney, with plaintiffs attorney receiving every fourth check thereafter.
4. Defendants shall pay the costs.
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING:
 S/_____________ THOMAS J. BOLCH COMMISSIONER
DISSENTING:
 S/_______________ DIANNE C. SELLERS COMMISSIONER